**Andrew EISELE, d/b/a Zero Internal Gauge Co., Plaintiff,**

v.

**John P. ST. AMOUR, Defendant.**

**Civ. A. No. 29070.**

United States District Court
E. D. Michigan, S. D.

Dec. 24, 1968.

business as Zero Internal Gauge Company, manufacturer of the accused device, to declare all six claims of defendant, John P. St. Amour's, patent 2,998,656 of September 5, 1961 invalid and to declare all six claims thereof to be not infringed by the manufacture and sale of plaintiff of his bore concentricity gauge.

Defendant St. Amour has counterclaimed and seeks a holding that all of the claims of his patent, referred to above, are valid and that claims 3 and 4 thereof are infringed by the plaintiff. He also seeks a permanent injunction and an accounting for past damages.

A trial was held by the Court, posttrial briefs were filed and oral arguments thereon were waived by both sides.

The issues raised by the pleadings and proofs are:

1. Are the six claims of the St. Amour patent in suit 2,998,656 of September 5, 1961, valid over the prior patents relied on by plaintiff at the trial?

2. Does plaintiff's gauge infringe either claims 3 or 4 of said patent in suit as construed in light of prior patents relied on by plaintiff at the trial?

## FINDINGS OF FACT

### The Nature of the Action and the Parties.

1. This is an action for a declaratory judgment of invalidity and non-infringement of the St. Amour patent, U.S. Patent No. 2,998,656, "Hole Location Gauge", which patent issued on September 5, 1961, to the defendant, John P. St. Amour.

2. The plaintiff, Andrew Eisele, is the owner of the Zero Internal Gauge Company. Zero manufactures bore diameter gauges and hole location and concentricity gauges (Tr. 308–310). Mr. Eisele has received many U.S. patents for his developments in gauging, 39 at the time of trial (Tr. 311).

Willis Bugbee of Barthel & Bugbee, Detroit, Mich., for plaintiff.

Richard P. Barnard and Martin Adelman, Barnard, McGlynn & Reising, Birmingham, Mich., for defendant.

## OPINION WITH FINDINGS OF FACT AND CONCLUSIONS OF LAW

MACHROWICZ, District Judge.

This is a declaratory judgment action brought by Andrew Eisele, doing

3. The defendant, John P. St. Amour, is the inventor of the gauge disclosed and claimed in the patent-in-suit. Since 1946, Mr. St. Amour has been associated with Mayes Tool Company, a manufacturer of various tools and gauges (Tr. 367).

4. This Court has jurisdiction over the subject matter and of the parties to this action by virtue of 35 U.S.C. Section 281 and 28 U.S.C. Section 2201.

5. The principal issues in this litigation are the validity of the St. Amour patent and plaintiff's infringement of it.

*The Background of the Patent-in-suit.*

6. The patent-in-suit discloses and claims an improved hole location and concentricity gauge. Hole location and concentricity gauges are generally utilized in connection with a master fixture that includes one or more precisely machined reference bores. Each reference bore generally has a hardened bushing inserted therein so that the effective reference bore is the bore formed by the hardened bushing. This bore may be referred to as the datum surface (Tr. 209). A datum surface is a surface from which all other measurements and computations are made for the manufacture of a part (Tr. 209). The part to be checked is put on the master fixture generally with reference to two or more lugs which will precisely locate the part to be checked with respect to the master fixture. Then a hole location and concentricity gauge is used in each of the precisely aligned bushings to determine whether the hole in the part to be checked is aligned axially or concentrically with respect to the bushing in the master fixture and, if it is not concentric, the gauge will indicate how far off the bore to be checked is from concentricity with the reference bore in the master fixture (Tr. 208–215).

7. Prior to the development of the St. Amour gauge of the patent-in-suit and the subsequent introduction of the accused gauge, two types of gauges were used in connection with a master fixture. One type was the prior art hole location and concentricity gauge. The other was

a simple plug gauge (Tr. 368). This type of gauge may be referred to as a rotating-probe rotating-indicator gauge and was, for some years prior to the St. Amour invention, marketed by plaintiff Eisele under the mark "Zero" (Tr. 329). This gauge was difficult for the operator to read because the indicator rotated while the probe was being rotated.

8. Many years after Eisele brought his Zero line of rotating-indicator rotating-probe hole location and concentricity gauges into the market, Mayes Tool received an order from the Ford transmission division for a master fixture to be supplied with Zero gauges (Tr. 368). Mr. St. Amour desired to build the gauges himself and felt that if he could develop a better gauge than the Zero gauge, Ford would be agreeable to the substitution of his gauge for the Zero gauge (Tr. 369). Mr. St. Amour then studied in detail the Zero rotating-indicator rotating-probe hole location and concentricity gauge and then commenced to develop his improved design (Tr. 369). As an outsider with a fresh approach to the art, his work led to the development of the patented gauge which had as its principal feature an indicator maintainable in a stationary position as its probe is rotated. In addition, the St. Amour patent teaches that certain advantages are attendant to the use of a stationary pilot. Since the accused gauges all use a rotary pilot, as do those of the prior art, the plaintiff asserts non-infringement of St. Amour (Tr. 175).

9. After the St. Amour gauge hit the market, Eisele was under great pressure to make a gauge with a stationary indicator and in 1960 he commenced to do so (Tr. 332).

10. Before marketing the accused gauges, and contrary to his custom, Eisele had his attorney conduct an infringement search (Tr. 351–352). This search did not turn up the patent-in-suit because at that time it was a pending application. Eisele then proceeded to file for a patent on the accused gauge and, further, he obtained a claim, claim 1 of Eisele 2,956,342, which differs literally from claims 3 and 4 of St. Amour in only

one immaterial respect and defines the same inventive concept as claims 3 and 4 of St. Amour (Tr. 230).

11. Eisele was aware of the St. Amour gauge before he designed the gauge shown Eisele 2,956,342, and further he knew that it had a rotating probe and a stationary indicator (Tr. 339).

### The Patent-in-Suit is Infringed.

■ 12. The term hole location and concentricity gauge as used in the claims of the patent-in-suit refers to a gauge adapted to be used with a master fixture.

13. The mechanical means invented by St. Amour for his stationary indicator hole location and concentricity gauge is clearly and distinctly set forth in claims 3 and 4 of the patent-in-suit, which claims read as follows:

3. A hole location and concentricity gauge comprising a body having an elongated longitudinal bore extending therethrough, a sleeve rotatably supported from said body and concentric with said bore, a shaft slidably disposed in said sleeve, means carried by one end of said sleeve and mounted for movement transversely of the sleeve for detecting the concentricity of a hole and connected to the corresponding end of said shaft for effecting longitudinal movement of the shaft responsive to movement of said detecting means transversely of said sleeve, an indicator carried by said body and connected to the end of said shaft remote from said detecting means for registering movement of said shaft, and means connected to said sleeve and carried by said body for effecting rotation of said sleeve independently of said body.

4. A hole location and concentricity gauge comprising a body having an elongated longitudinal bore extending therethrough, a sleeve rotatably disposed in said bore and having one end portion projecting from one end thereof, a shaft slidably disposed in said sleeve, means carried by one end of said sleeve and mounted for movement transversely of the sleeve for detecting the concentricity of a hole and connected to the corresponding end of said shaft for effecting longitudinal movement of the shaft responsive to movement of said detecting means transversely of said sleeve, an indicator carried by said body and connected to the end of said shaft remote from said detecting means for registering movement of said shaft, and means connected to the sleeve and carried by said body for effecting rotation of said sleeve independently of said body, an elongated cylindrical pilot section carried by said body surrounding a portion of said projecting portion of said sleeve.

14. As admitted by plaintiff's expert, Mr. Beck, the accused gauges of Eisele literally correspond to each and every element of claims 3 and 4 (Tr. 242–244). Furthermore, each such element, including the rotating pilot, performs the same function in the same way to achieve the same result as the corresponding element of the St. Amour gauge.

### The Patent-in-Suit is Novel.

15. The plaintiff at trial relied on the following six prior art patents:

    (1) Clark 2,466,380;

    (2) Croston 2,296,707;

    (3) Heitzmann, French 838,409;

    (4) Kellenberger, British 461,052;

    (5) Payne 1,241,469; and

    (6) Schendel 1,290,789,

but other than Heitzmann, the cited patents relate to gauges for machine tools which gauges cannot be used in connection with a master fixture and, hence, are not hole location and concentricity gauges.

16. The only reference that disclosed a gauge which could be used in connection with a master fixture is Heitzmann, and Heitzmann contains all of the elements and the respective teachings of the other cited patents with respect to gauges for use in connection with a master fixture (Tr. 258–260)

■ 17. The Heitzmann reference was the subject of considerable attention

by the plaintiff at trial. It was the only prior art reference of which the plaintiff introduced a model and, further, consistently at trial, the plaintiff maintained that Heitzmann, which was designed as an out-of-roundness gauge for determining the wear on aircraft cylinders, could be used as a hole location and concentricity gauge since it was designed to reference solely with respect to a bore (Tr. 261). However, it was clearly brought out on cross-examination that Heitzmann would not, if used with a master fixture, pilot off a bore in the master fixture but, in contrast, the gauge of Heitzmann would reference off of the top surface of the master fixture (Tr. 274). This difference in structure and function is of considerable importance since inaccurate results would be obtained if the top surface was out of square with the bore (Tr. 271). Thus, Heitzmann is neither structurally or functionally a hole location and concentricity gauge.

*Invention of St. Amour was not Obvious at the Time the Invention was Made.*

18. St. Amour disclosed and claimed a hole location having a stationary indicator whereas the prior art taught rotating-indicator rotating-probe hole location and concentricity gauges, and a stationary indicator gauge for measuring the out-of-roundness of aircraft cylinder and operating on a different principal than the gauge of St. Amour. These prior art devices were in existence for many years and yet while the art of hole location and concentricity gauges was one in which there was considerable patent activity (Tr. 330), it was not until an outsider, St. Amour, entered the field that a stationary indicator hole location and concentricity gauge was forthcoming. Thus, the St. Amour invention was not obvious to one skilled in the gauge art at the time the invention was made.

*St. Amour Filled a Long Felt Need in the Art and has Enjoyed Considerable Commercial Success*

19. In spite of the increased expense of stationary indicator hole location

and concentricity gauges, they have rendered obsolete rotating indicator hole location and concentricity gauges (Tr. 371). Further, their introduction has resulted in a five-fold increase in the total market for hole location and concentricity gauges (Tr. 370–371).

20. At the time of the invention of St. Amour there was a need in the art for a stationary indicator rotating probe concentricity gauge and this need had existed at least since the Zero gauges had entered the market in 1951.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the parties and of the subject matter of this action.

2. Defendant John P. St. Amour is the original and first inventor of the subject matter disclosed and claimed in United States Patent No. 2,998,656.

3. The St. Amour patent is valid and the plaintiff has not sustained its burden of proof in its attempt to overcome this presumption of validity.

4. None of the references cited by the plaintiff anticipate the St. Amour patent.

5. The invention disclosed and claimed in the St. Amour patent would not have been obvious to a man of ordinary skill in the gauge art at the time of the invention.

6. Claims 3 and 4 of the St. Amour patent are infringed by the accused gauges made by the plaintiff.

7. The defendant is entitled to a judgment enjoining the plaintiff, and those in privity with him, from further infringement of the St. Amour patent and to an accounting for damages for plaintiff's past infringement.

8. The defendant is entitled to its costs in this action in an amount to be determined.

A decree in accordance with this opinion may be presented to the Court for its signature.